# IN THE COURT OF APPEALS OF IOWA

No. 23-1130
Filed September 13, 2023

IN THE INTEREST OF N.S.,
Minor Child,

L.S., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Cedar County, Meghan Corbin,
Judge.

A mother appeals the removal of her child from her custody. **AFFIRMED.**

Katie Reidy Abel, Tipton, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant Attorney
General, for appellee State.

Mark J. Neary, Iowa City, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**AHLERS, Judge.**

The juvenile court adjudicated N.S.—a child born in 2016—to be a child in need of assistance (CINA). At the CINA dispositional hearing, the child's guardian ad litem (GAL) sought removal of the child from the mother's custody.[1] The State and Iowa Department of Health and Human Services (HHS) did not share the GAL's immediate concerns and did not advocate for removal. The juvenile court ultimately entered a dispositional order placing the child in HHS's custody for placement with relatives. The mother appeals the dispositional decision placing custody of the child with HHS rather than leaving the child in her custody.

We review child-in-need-of-assistance proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). While we give weight to the juvenile court's factual findings, those findings are not binding on us. *Id.* "Our primary concern is the child[]'s best interests." *Id.*

Following the dispositional hearing, the juvenile court must "make the least restrictive disposition appropriate considering all the circumstances," choosing from the options listed in Iowa Code sections 232.100 through 232.102. Iowa Code § 232.99(4) (2023). Here, the juvenile court found that placing the child in either parent's custody was not in the child's best interests, so pursuant to section 232.102(1)(a), the court placed custody with HHS. As this disposition is contrary to the statutory preference for the child to remain in the parental home set forth in section 232.102(4)(a), there must be clear and convincing evidence that "[t]he child cannot be protected from some harm which would justify the

---

[1] The child's father was in jail and awaiting criminal sentencing following his conviction for sexually abusing the child's other half-siblings.

adjudication of the child as a [CINA] and an adequate placement is available." *Id.* § 232.102(4)(a)(2).[2]

The juvenile court determined that transfer of custody to HHS was necessary due to the condition of the home, the fact that the child's older half-sister would not be around to babysit anymore because her custody was transferred to her father at the same time,[3] the mother's failure to attend to the child's vision needs, and the mother's lack of supervision. The mother contends the juvenile court erred in determining that placement with her would be contrary to the child's welfare, and she attacks each of the juvenile court's bases for transfer of the child's custody to HHS.

With respect to the cleanliness of the home, a case worker "observed dirty dishes, clutter on the floor and counters with no space for anything, . . . clothes laying around the entire home, . . . [and the child]'s mattress ripped and on the floor on piles of clothes." While we agree the condition of the home needs to improve, we do not believe such condition alone would justify adjudicating the child as a CINA. *See id.* § 232.102(4)(a)(2) (requiring proof of some type of adjudicatory harm before custody can be transferred away from a parent).

---

[2] Iowa Code section 232.102(4)(a)(1) provides an alternate ground for placing the child in the custody of someone other than a parent when "[t]he child cannot be protected from physical abuse without transfer of custody." As there is no allegation this child is in danger of physical abuse, we do not address this alternative ground.

[3] The half-sister was placed with her father as she prepared to start school in a new school district. Although the mother objected to transfer of custody of the half-sister to her father at the time of the dispositional hearing, she does not appeal the order transferring custody to the father, presumably because she and the father had already agreed the half-sister would eventually live with her father anyway.

Unlike the juvenile court, we are not as concerned about the child's older half-sister's inability to babysit the child following the transfer of her custody to the child's father. The juvenile court's order stated, "When told that [the half-sister] would be going to live with her father, [the mother] expressed concern that she would lose her job because [the half-sister] provides care while she is at work and she has no one else to watch the child." This statement is not supported by the record—the mother made no such statement at the dispositional hearing, and we find no such statement in the record. Certainly, transfer of the half-sister's custody requires the mother to find different childcare for the child at issue, but the record does not support finding that the mother would not secure alternative childcare for the child.

As to the mother's inattentiveness to the child's vision needs, the mother's conduct is of concern. The mother disclosed the child is losing vision in his left eye. So glasses are important for the child to function. But when the child broke his glasses, the mother had still not replaced them by the time of the dispositional hearing three to five months later, though she testified that she had ordered a replacement pair. A report suggested the mother actually replaced the glasses earlier but returned them because "she did not like how they looked." Meanwhile the child had a hard time seeing in class. While we agree with the GAL's observation that the mother's failure to obtain replacement eyeglasses "is not the most outrageous type of failed parenting," the fact remains that the mother is failing to meet the child's basic medical needs. We find this constitutes a form of neglect for which the child could be adjudicated a CINA. *See id.* § 232.96A(2) (permitting adjudication as a CINA when a child's parent has neglected the child). As a result,

it forms a basis for transferring custody to HHS. *See id.* § 232.102(4)(a)(2) (permitting transfer of custody from a parent when the child is not protected from harm justifying adjudication as a CINA).

We also have general concerns about the mother's ability to adequately supervise the child. Shortly before the dispositional hearing, police found the child about one-and-one-half blocks from home wandering around in his slippers. The child apparently left the home when the mother sent him to his room. When police returned him to the home, the mother was unaware that the six-year-old child had left the house. This incident raises questions about the mother's supervision of the child. While a one-time incident of a child sneaking out and a parent not discovering the escape immediately may not justify removal, there are other red flags here. One service provider working with the family observed the mother's interactions with the child. The worker characterized the interactions as the child "seems like the lost child who wasn't even there" and is not "even looked after." These observations coupled with the mother's failure to notice that the child left the house in his slippers convinces us that the mother failed to exercise a reasonable degree of care in supervising the child, which is a ground for adjudication that could justify transfer of custody. *See id.* §§ 232.96A(3)(b) (permitting CINA adjudication when a child is imminently likely to suffer harmful effects as a result of the failure of the child's parent to exercise a reasonable degree of care in supervising the child), .102(4)(a)(2) (permitting transfer of custody from a parent when the child is not protected from harm justifying adjudication as a CINA).

Our conclusion that there is a statutory basis for transferring custody from the mother to HHS does not end the inquiry. Before such transfer can occur, there must also be "a determination that continuation of the child in the child's home would be contrary to the welfare of the child." *See id.* § 232.102(4)(b). After our de novo review of the record, we determine that continuing to allow the child to remain in the mother's home would be contrary to the child's welfare. The mother has shown limited parenting ability with this child and his older siblings. That limited ability resulted in the neglect and failure to supervise noted in this opinion. Transferring custody to HHS is in the child's best interests at this time. That said, we want to highlight the fact that the dispositional order we are affirming is, by its nature, temporary. While the passage of time works this case toward permanency, the mother should continue to receive services to help her improve her parenting, and the mother should participate in those services. Given the bases for transfer of custody to HHS in this case, the road to reunification is not as long or as bumpy as it is in many cases we see. The mother should be given a fair opportunity to demonstrate improved parenting ability, and, if she does, it is expected that custody of the child will be returned to the mother at the earliest reasonable juncture.

**AFFIRMED.**